UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:17-cv-00008-TBR

CITY OF MURRAY, KENTUCKY,                                PLAINTIFF

v.

ROBERTSON INC. BRIDGE
AND GRADING DIVISION, et al.,             DEFENDANTS/THIRD-PARTY PLAINTIFFS

v.

DALE BEARDEN
CONSTRUCTION CO., INC.,                      THIRD-PARTY DEFENDANT

**Memorandum Opinion & Order**

This matter comes before the Court upon two motions. First, Defendant Federal Insurance Company, ("FIC"), has moved for summary judgment against Plaintiff City of Murray, Kentucky, ("Murray"). [DN 78.] Second, Murray has moved for partial summary judgment against FIC. [DN 84.] The merits of these matters are discussed below.

**A. Factual Background**

This case arises out of events which transpired during a construction project called the "East Fork Clarks River Pump Station Improvements and Force Main," ("the Project"). [DN 1-1, at 1.] On January 12, 2015, Murray and Defendant Robertson Inc. Bridge and Grading Division, ("Robertson"), entered into a contract, (the "Contract"), whereby Robertson was to complete the Project on behalf of Murray, which owns the property. [DN 1, at 3.] In relation to the Contract, a construction performance bond, ("Performance Bond"), and a payment bond, ("Payment Bond"), were executed. [*Id.*] Pursuant to the terms of the Performance Bond, FIC and Robertson bound themselves, jointly and severally, "for the performance of the Construction Contract" and, under

1

the Payment Bond, FIC and Robertson bound themselves "to pay for labor, materials, and equipment…use[d] in the performance of the Contract…." [DN 1-2.]

On January 7, 2016, the Project Engineer, GRW Engineers, Inc., ("GRW"), notified Robertson "in writing of certain defects in [Robertson's] work in the construction of a concrete wet well that is part of the Project." [DN 84-2, at 4 (Parson's Affidavit); *see also* DN 84-5 (GRW Letter).] According to GRW, Robertson's work on the concrete wet well "was defective because it did not comply with the Project plans and specifications," and GRW "requested [that Robertson] remove and replace the defective work, unless an acceptable, engineered alternative was proposed." [*Id. See also* DN 84-5.]

Thereafter, Murray, through counsel, wrote to Robertson and FIC on December 1, 2016 and instructed them that, although GRW had made Robertson aware of the alleged defects eleven months previous, no corrective action had been commenced by Robertson or anyone else. [DN 84-6.] In that same letter, Murray informed Robertson that, "[a]s a result of Robertson's work on the Project, the heat in an adjacent existing building has ceased working. That building houses computers that could be damaged by exposure to cold temperatures." [*Id.* at 2.] Murray indicated that Robertson's counsel had been notified of this additional issue on November 21, 2016, but that Murray had "received no indication that Robertson ha[d] investigated this problem." [*Id.*] Murray went on to declare that it was "considering declaring a contractor default and…request[ed] a conference with Robertson and [FIC] within 15 days to discuss the remedial plan of action." [*Id.*] Murray concluded by clarifying that its letter constituted a formal "demand[] that Robertson fulfill its obligations under its contract and that [FIC] fulfill its obligations under the performance bond that it issued in connection with th[e] project." [*Id.*]

Next, on January 6, 2017, Murray, through counsel, wrote again to Robertson and FIC and informed them it had received no response to its December 1, 2016 letter. [DN 84-8, at 1.] Murray then purported to "exercis[e] its right to terminate the services of [Robertson] for the Project," and indicated that it would "exercise all of its rights under its contract with [Robertson] to correct the defective work and finish the Project." [*Id.*] Next, Murray cited to portions of the Contract, informing Robertson and FIC that it considered Robertson "responsible for all claims, costs, losses and damages (including but not limited to, all fees and charges of engineers, architects, attorneys, and other professionals and all court, arbitration or other dispute resolution costs) sustained by owner arising out of, or relating to, [Murray's] exercise of its rights and remedies, including the performance of the corrective work and completion of the Project." [*Id.*] Murray filed suit in this Court five days later, on January 11, 2017. [DN 1.]

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56 instructs that "[t][he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party." *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Further, "[t]he judge is not to 'weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

"The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists." *Am. Guarantee and Liability Ins. Co. v. Norfolk S. Rwy. Co.*, 278 F. Supp. 3d 1025, 1037 (E.D. Tenn. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant "may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply 'by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex*, 477 U.S. at 325). If the movant carries his or her burden here, "[t]he non-moving party…may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 47 U.S. at 586). Finally, "[t]he mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient to defeat a motion for summary judgment; there must be evidence on which the jury could reasonably find for the non-moving party." *Id.* (internal citations and brackets omitted). This means that "[i]f the [non-moving] party fails to make a sufficient showing on an[y] essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment." *Am. Guarantee and Liability Ins. Co.*, 278 F. Supp. 3d at 1037 (citing *Celotex*, 477 U.S. 323).

### C. FIC's Motion for Summary Judgment

The first motion is FIC's motion for summary judgment. [DN 78.] FIC argues that Murray filed to provide it with adequate notice, as required under the terms of the Performance Bond, and that this failure precludes any recovery by Murray as against FIC. [DN 78-1, at 7.]

#### 1. Terms of the Performance Bond

In support of its motion for summary judgment, FIC points to §§ 3-5 of the Performance Bond, which FIC and Robertson both executed in connection with Robertson's work on the Project for Murray. [DN 1-2.] Section 3 explains the steps Murray must take before FIC's obligation to perform is invoked due to a contractor default. It provides as follows:

> 3. If there is no Owner[1] Default, the Surety's[2] obligation under this Bond shall arise after:
>
> 3.1 The Owner has notified the Contractor[3] and the Surety at its address described in Paragraph 10 below, that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the owner's right, if any, subsequently to declare a (Contractor Default); and
>
> 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3 The Owner has agreed to pay the balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

[*Id.* at 2.]

Where the terms of § 3 are complied with, as Murray claims it has done here, § 4 is triggered. Section 4 provides that, upon such satisfaction of § 3 by Murray, "the Surety shall promptly and at the Surety's expense take one of the following actions:"

> 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

---

[1] In the Performance Bond, Murray is referred to as "Owner."
[2] In the Performance Bond, FIC is referred to as "Surety."
[3] In the Performance Bond, Robertson is referred to as "Contractor."

5

4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contract selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contact, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

    (1) After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable, after the amount is determined, tender payment therefor to the Owner; or

    (2) Deny liability in whole or in part and notify the Owner citing reasons therefor.

[DN 1-2, at 2.] Finally, § 5 provides as follows:

If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner, if the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part without further notice, the Owner shall be entitled to enforce any remedy available to the Owner.

[*Id.*] FIC contends that Murray failed under § 3.1 to attempt to arrange a conference with FIC and Robertson, and that Murray further failed to comply with the time constraints for declaring a contractor default against Robertson under § 3.2. [DN 78-1, at 4.] Thus, according to FIC, its § 4 obligations were never triggered, and this Court should dismiss all claims against it.

### 2. Condensed Timeline

Because the Performance Bond and, relatedly, FIC's motion, relies heavily on the dates on which certain events occurred, the Court finds it helpful to lay out in concise and

chronological fashion the pertinent dates which have been established through documentary evidence contained in the Record:

**January 12, 2015:** Murray and Robertson enter into the Contract to complete the Project. [DN 1-1, at 1.] Robertson and FIC execute the Performance Bond and Payment Bond that same day. [DN 1-2.]

**January 7, 2016:** The Project Engineer, GRW, sends a letter to Robertson indicating what GRW views as defects in Robertson's work on the Project. [DN 84-5.]

**December 1, 2016:** Murray, through counsel, sends via certified mail a letter to Robertson and FIC, (Murray's "December 2016 Letter"), indicating that it is considering declaring a contractor default, and requests a conference with Robertson and FIC within fifteen days to discuss the issue. [DN 84-6.]

**December 5, 2016:** Murray's December 2016 Letter is signed for at the offices of Robertson's counsel. [DN 84-6, at 43; *see also* DN 84-2, at 4-5.]

**December 6, 2016:** Murray's December 2016 Letter is signed for at the listed address for FIC. [DN 84-6, at 42; *see also* DN 84-2, at 4-5.]

**January 3, 2017:** Derek Popeil, Assistant Vice President and Surety Claims Manager of Chubb Surety Claims,[4] sends an email to Robertson stating the following: "Federal has been contacted about a potential bond claim by the City as a result of the an [sic] alleged failure to correct certain defective work and failure to provide a remedial plan. Kindly advise how Robertson plans to proceed." [DN 84-7.]

**January 6, 2017:** Murray, again through counsel, sends another letter via certified mail to Robertson and FIC, (Murray's "January 2017 Letter"), wherein it purports to terminate Robertson's services. [DN 84-8.]

---
[4] Chubb is a parent organization of FIC.

**January 11, 2017:** Murray files suit in this Court on January 11, 2017. [DN 1.]

With this chronology in mind, the Court will now turn its attention to a substantive analysis of FIC's motion for summary judgment.

### 3. Discussion

The main thrust of FIC's argument is that its claims department did not receive Murray's December 2016 Letter until January 19, 2017, eight days after Murray filed suit. [DN 78-1, at 4.] Thus, FIC argues, it was not provided with notice of Murray's consideration of potentially declaring a contractor default, or of Murray's desire to arrange a conference to discuss remedial plans, as required by § 3.1 of the Performance Bond. [DN 1-2, at 2.] That failure would mean that FIC's obligations under § 4 would never have been triggered. [*See id.*]

FIC's motion homes in on the term "notice," in reference to § 3.1's requirement that Murray "notif[y] the Contractor and the Surety at its address…that [Murray] is considering declaring a Contractor Default and has requested and attempted to arrange a conference with [Robertson] and [FIC]…." [*Id.*] Importantly though, while FIC refers exclusively to whether notice was received by its *claims department*, there is no such requirement contained in the Performance Bond. Indeed, by the terms of the Performance Bond, notification was required to be sent to the address provided on the signature page, consistent with § 10 contained therein. [*Id.*] With respect to FIC, that address is "Federal Insurance Company, 15 Mountain View Road, P.O. Box 1615, Warren, NJ 07061-1615." [*Id.* at 1.] There is no mention of the claims department or any requirement imposed upon Murray to forward any such notice specifically to FIC's claims department. [*See generally id.*] Thus, the Court must reject any attempt by FIC to create a distinction between notice to it generally and notice to its claims department. The Performance Bond creates no distinction and FIC has provided no additional evidence which

8

would tend to show that this was the intent of the parties when they executed it. *See Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007) ("[T]he interpretation and legal effect of a contract is a matter of law.").

However, even setting aside FIC's attempt to frame Murray's notice obligation narrowly as one involving FIC's claims department, FIC's motion fails for a lack of evidence that notice was not received until January 19, 2017. [*See* DN 78-1.] In other words, even if this Court were inclined to construe the Performance Bond as dictating that notice be provided by Murray to FIC's claims department, which it is not, FIC's motion would still fail. Federal Rule of Civil Procedure 56(c) provides that:

> [a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations…, admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A)-(B). Here, FIC failed to satisfy either subsection (A) or subsection (B). Apart from citing to the Performance Bond generally for the provisions it contains, FIC largely fails to cite to any evidence in the Record which would tend to support its contention that notice was not received until January 19, 2017, either by its designated recipient or its claims department. Indeed, FIC's contentions that it did not receive notice until January 19, 2017 consist largely of unsworn arguments in the body of its motion. *See Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 n.1 (6th Cir. 2010) ("[A] court may not consider unsworn statements when ruling on a motion for summary judgment.") (citation omitted). FIC failed to attach any evidence to its instant motion that would support its claim, only providing the aforementioned correspondence between Murray, Robertson, and FIC, and a contextless

9

photocopy of an envelope that shows Murray's counsel as the letter's sender and FIC as its recipient. [DN 78-5.] The envelope is date-stamped January 6, 2017 with the following corresponding stamp: "WTO Surety by TBH." [*Id.*] The postage stamp is dated December 1, 2016. [*Id.*] There is no clarification of what exactly this envelope purports to show, nor is there a corresponding affidavit or other verification. All FIC has provided is the following unsworn statement: "[o]n January 19, 2017, the claims department of [FIC] received the December 1, 2016 letter, as well as, [sic] the January 6, 2017 letter. The envelope containing the December 1, 2016 letter is attached hereto as Exhibit 'D'." [DN 78-1, at 2.] But the envelope date stamp is January 6 and not January 19, and so even setting aside the contextless nature of FIC's presentation of this unauthenticated envelope, it still does not provide support for FIC's ultimate contention.

Finally, with respect to FIC's "notice" argument, in its response/counter-motion, Murray includes as an exhibit the aforementioned email to Robertson from Chubb Assistant Vice President Derek Popeil, ("Popeil"), dated January 3, 2017 at 1:04 p.m., wherein Popeil makes specific references the potential bond claim by Murray due to alleged defects in Robertson's work. [DN 84-7.] This evidence tends to show that Chubb, the parent organization of FIC, was on notice of Murray's potential bond claim by, at the latest, January 3, 2017, thereby casting further doubt on FIC's January 19, 2017 argument.

Because the Court has rejected FIC's "notice" argument, the Court must also reject FIC's secondary argument that Murray failed to properly attempt to arrange a conference as required under § 3.1 of the Performance Bond. [*See* DN 78-1, at 4.] FIC argues that Murray's December 2016 Letter was "not timely received" by FIC because FIC's claims department did not receive it until January 19, 2017. [*Id.* at n.1.] Of course, the Court has already dispensed with FIC's

argument that notice was required to have been given to its claims department, and so any corresponding argument regarding Murray's attempts to schedule a conference must also fail. However, FIC also argues that Murray "did not attempt to arrange a conference with Robertson thereby failing to abide by Section 3.1 of the [Performance] Bond because…it merely mentioned a conference which is never arranged…." [*Id.* at 5.] This argument, too, fails to warrant the grant of summary judgment in FIC's favor because Murray's December 2016 Letter specifically states Murray's "request[] [for] a conference with Robertson and [FIC] within 15 days to discuss the remedial plan of action." [DN 84-6, at 2.] This appears to be consistent with the requirement of § 3.1 of the Performance Bond, which indicates that the "Owner," Murray, must request and attempt to arrange a conference with the "Contractor," Robertson, and the "Surety," FIC, "to discuss methods of performing the Construction Contract." [DN 1-2, at 2.] There is no requirement that a conference must be held, and the Court must therefore reject FIC's argument.

### D. Murray's Motion for Partial Summary Judgment

Having disposed of FIC's motion for summary judgment, the next issue is that of Murray's response/counter-motion, wherein it asks for summary judgment in its favor on the issue of any notice-based defenses FIC may seek to raise in the future. [DN 84.] Murray's motion largely tracks FIC's motion for summary judgment, discussed above, and argues that the evidence shows that notice was provided to Robertson and FIC in accordance with the terms of the Performance Bond, thereby precluding any further arguments by FIC that notice was somehow inadequate. Neither FIC nor Robertson responded to this motion. Pursuant to Local Rule 7.1(c), a party's "[f]ailure to timely respond to a motion may be grounds for granting the motion." With this in mind, though, the Court will address the motion on its merits.

In its motion, Murray points specifically to § 3 of the Performance Bond, laid out above, contends that it complied with §§ 3.1, 3.2, and 3.3, as it was required to do, and asks the Court, in addition to denying FIC's motion for summary judgment, to issue an additional order precluding FIC from hereafter contending that Murray failed to provide it with adequate notice. The Court agrees with Murray on this issue and will grant the motion in part.

The requirements of § 3.1 are laid out above in this Memorandum Opinion, but they bear repeating here. Sequentially, Murray was required to first notify Robertson and FIC at the addresses ascribed to them on the first page of the Performance Bond that it was "considering declaring a Contractor Default" and, further, to "request[] and attempt[] to arrange a conference with" Robertson and FIC "to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract." [DN 1-2, at 2.] The Court finds that Murray complied with § 3.1.

First, Murray utilized the correct address for FIC, as the address listed in Murray's December 2016 Letter matches the one on the first page of the Performance Bond, in accordance with § 10 of the bond, and Murray further sent the letter to Robertson's legal counsel. Second, the language utilized by Murray's counsel in the December 2016 Letter tracks closely the language of § 3.1 of the Performance Bond: "[f]or the foregoing reasons, the City of Murray is considering declaring a contractor default and is requesting a conference with Robertson and [FIC] within 15 days to discuss the remedial plan of action." [DN 84-6, at 2.] The only remaining issue with respect to § 3.1, then, is that of actual notice to Robertson and FIC, *i.e.*, whether the December 2016 Letter was actually received at the respective addresses. In its instant motion, Murray provides ample proof of receipt of the letter. Murray has included with its motion the certified mail receipt regarding the December 2016 Letter's delivery at FIC's listed address. [DN

84-6, at 42.] The letter was signed for by FIC on December 6, 2016. [*Id.*] Also, another copy of the letter was signed for at the address of Robertson's legal counsel on December 5, 2016. [*Id.* at 43.] Thus, Robertson had actual notice under § 3.1 no later than December 5, 2016 and FIC had the same no later than December 6, 2016, meaning Murray discharged its obligations under § 3 of the Performance Bond on December 6. [*See id.* at 42-43.] The Court's decision here is bolstered not only by the certified mail receipts and the corresponding affidavit provided by Murray, but also by FIC's failure to refute any of this, not only in its original motion for summary judgment, but also by its failure to respond to Murray's instant motion at all.

Next, the Court finds that Murray complied with § 3.2 of the Performance Bond, which required Murray to formally declare a contractor default as against Robertson and formally terminate Robertson's right to complete the contract. [DN 1-2, at 2.] Murray was precluded by the terms of the Performance Bond from declaring the default until at least twenty days after both Robertson and FIC received notice in accordance with § 3.1. [*Id.*] As noted above, Robertson received notice on December 5, 2016 and FIC received notice on December 6, 2016. [DN 84-6, at 42-43.] Attached to Murray's motion is the formal termination letter counsel for Murray sent to Robertson and FIC at the same aforementioned addresses. That letter, dated January 6, 2017, informed Robertson and FIC of Murray's formal termination of Robertson's services. [DN 84, at 1.] Importantly, the January 6, 2017 date shows that the termination came thirty-two days after Robertson received notice under § 3.1 and thirty-one days after FIC received the same. This means that the letter complied with § 3.2 of the Performance Bond because it fell outside the twenty-day buffer afforded Robertson and FIC. [*See* DN 1-2, at 2.] Certified mail receipts for this letter have also been supplied by Murray with respect to both Robertson and FIC, [DN 84-8, at 3-4], as well as a corresponding affidavit. [DN 84-2, at 7.] Accordingly, the Court finds that

Murray has complied with §§ 3.1 and 3.2, and further finds that FIC is precluded from asserting any "notice" defenses under either of these sections of the Performance Bond.

Finally, Murray has laid out further arguments in its instant motion that it also complied with § 3.3 of the Performance Bond, thereby triggering FIC's obligations under § 4, and that Murray complied with all of its obligations under § 5 as well. However, the Court finds that the issues it would confront in analyzing §§ 3.3, 4, and 5 go beyond the question of "notice" and whether and when FIC received Murray's December 2016 Letter and January 2017 Letter, and so the Court will reserve judgment on these further issues at this time.

### E. Conclusion

For the reasons stated in this Memorandum Opinion, and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED** as follows:

1. FIC's motion for summary judgment, [DN 78], is **DENIED**.

2. Murray's motion for partial summary judgment, [DN 84], is **GRANTED in part and DENIED in part.** The Court finds that Murray complied with §§ 3.1 and 3.2 of the Performance Bond, and FIC is **HEREBY PRECLUDED** from asserting any "notice" defenses arising from these sections. However, the Court will reserve judgment on the remainder of the issues presented in Murray's motion.

**IT IS SO ORDERED.**

cc: Counsel of Record